317 N.W.2d 701 (1982)
STATE of Minnesota, Respondent,
v.
Keith Paul HAGEN, Appellant.
No. 82-38.
Supreme Court of Minnesota.
March 26, 1982.
Nelson & Obenland, Glenwood, Warren Spannaus, Atty. Gen., St. Paul, for appellant.
Robert J. Walter, County Atty., Glenwood, for respondent.
Considered and decided by the court en banc without oral argument.
AMDAHL, Chief Justice.
This is a sentencing appeal by a criminal defendant attacking a dispositional and durational departure by the trial court.
Defendant pleaded guilty to criminal sexual conduct in the second degree, Minn.Stat. § 609.343(a) (1980) (sexual contact with complainant under 13 years of age by actor *702 who is more than 36 months older) which carries a statutory maximum prison term of 15 years. The presumptive sentence for an offense of this severity level (VI) by one with defendant's criminal history score (0) is a stayed prison term with a duration of 21 months. The agent who prepared the presentence investigation report recommended imposition and execution of a 21-month prison term. The trial court imposed and ordered executed a 54-month prison term. We affirm the dispositional departure but reduce the duration of defendant's sentence to that established by the Sentencing Guidelines Commission.
There is some evidence that defendant, who is 27 years old, himself was once the victim of sexual abuse. He has always been "different" from his peers and apparently began exhibiting deviant sexual behavior involving younger children when he was an adolescent. Beginning in 1970 he was hospitalized in Willmar State Hospital for 3 years, where he completed high school.
In 1973 defendant was formally charged with taking indecent liberties for having sexual contact with a young girl. That charge was dismissed when defendant agreed to an evaluation and treatment.
Defendant has been living at home in Glenwood and working at a fish processing plant in town. The offense of which he was convicted was committed in Glenwood on April 14, 1981. The victim was a young relative whom defendant had sexually abused before. On the occasion in question defendant took the victim for a ride and then, ostensibly while teaching him what he had learned in a CPR course, had him pull his pants down so that he could show him that a pulse could be found in one's groin.
The report from St. Peter, where defendant was sent for testing to see if he was treatable, was pessimistic. Defendant was diagnosed as having a passive aggressive personality disorder with pedophilia. The team which evaluated defendant concluded that defendant was not a suitable candidate for treatment because of his unwillingness to admit he had a problem which needed treatment, but that he was likely to commit similar offenses in the future and that efforts should be made to protect the public.
The agent who prepared the presentence investigation report agreed with the hospital team's belief that a correctional response focusing on defendant's responsibility for his behavior was more appropriate than psychological intervention. He suggested a dispositional but not durational departure, i.e., an executed term of 21 months in prison.
The trial court filed the following departure report in support of the dispositional and durational departure:
The sentence departs from both the presumptive disposition and the presumptive duration. The reasons for departure are:
1. The victim was particularly vulnerable due to age, which was known to the offender.
2. The victim was treated with particular cruelty for which the offender should be held responsible. This factor was not given much weight by the Court, since it can be argued that it occurs in most violations of this statute, particularly when young children are involved, and presumably the guidelines were adopted with that in mind.
3. The offense involved a high degree of planning in order to induce the child victim to accompany the offender to a remote location, and then to represent that the offender was showing the victim areas on his body where a pulse can be felt.
4. The defendant used his position and status to facilitate the commission of the offense, as he is an uncle of the victim, in a position of trust and confidence.
5. The subject defendant has been involved in other acts similar to the current offense, as detailed in his statements to the evaluating team at the Minnesota Security Hospital.
6. Any alternative disposition involving treatment was discounted by the Court because of the conclusions and recommendations of the team of evaluators, *703 which include a conclusion that the defendant is not an appropriate candidate for treatment at the Minnesota Security Hospital.
7. The Medical Director's letter states "Nor can we recommend any less restrictive setting for him. He is considered by this team to be highly likely to reoffend against children and we recommend that efforts be made to ensure their safety from his abuse." This appears as a major aggravating factor to be used as a reason for the departures.
We conclude that the trial court's determination that defendant was unamenable to probation and that some prison time was needed is supported by the record. State v. Park, 305 N.W.2d 775 (Minn.1981). However, we conclude that the durational departure was not justified.
There is no question that the victim in this case was particularly vulnerable due to age and that normally the trial court would be justified in relying on that as an aggravating factor justifying a durational departure. State v. Erickson, 313 N.W.2d 16 (Minn.1981); State v. Stumm, 312 N.W.2d 248 (Minn.1981). However, generally the victim's vulnerability due to age cannot be relied upon as an aggravating factor when the victim's vulnerability due to age has already been taken into account by the legislature in determining the elements of the offense. That is the case here.
This clearly is not a case involving particular cruelty of a sort not normally associated with the offense. Rather, this was a typical case of criminal sexual conduct under subsection (a) of section 609.343.
None of the other factors relied upon by the trial court is a listed aggravating factor. Factors number 3, 4, and 5 of the 7 factors relied upon by the trial court are factors which may be considered in determining whether an offense is a major economic offense. Factors 3 and 4 are also factors which may be used in determining whether the offense was a major drug offense. Even if factors 3, 4, and 5 could be relied upon generally as a basis for departure in sex cases, we do not believe that they could properly be relied upon here. Defendant did not exhibit any great sophistication in committing this offense. Whether he used his relationship with the victim to facilitate the commission of the offense is one of the factors relied upon in determining the degree of the seriousness of a sex offense and which therefore should not be available for use in determining whether to depart. Factor 6 relates only to whether a dispositional departure was justified.
We are left, then, with factor 7, the likelihood that defendant will commit more such offenses and that efforts should be made to protect children from this likelihood. Such a factor potentially could be subject to serious abuse and logically could be used to justify indefinite confinement, something which is not permitted by law for any offense other than first-degree murder. Since indefinite confinement is not an alternative, it would appear that the same arguments against the 21-month presumptive term could be made against the 54-month term imposed by the trial court: at some point defendant is going to be released and at that point he may present a danger to the public, particularly to members of his extended family. The answer to this concern is that if the authorities believe that defendant is still dangerous when he is released from prison, they can take appropriate steps at that time either to isolate defendant from the family members who are potentially his victims or to obtain a civil commitment if that appears justified.
Affirmed as modified.