**STATE of Minnesota, Respondent,**

v.

**Paul C. JOHNSON, Appellant.**

**No. 81–974.**

Supreme Court of Minnesota.

Dec. 23, 1982

---

C. Paul Jones, Public Defender, and Mark F. Anderson, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Thomas L. Johnson, County Atty., Vernon E. Bergstrom, Chief, Appellate Div., Thomas A. Weist, Rick Osborne, Beverly J. Wolfe and Lee W. Barry, Asst. County Attys., Minneapolis, for respondent.

OTIS, Justice.

Defendant was found guilty by a district court jury of criminal sexual conduct in the first degree, Minn.Stat. § 609.342(a) (1980) (sexual penetration of a person under 13 years of age by a person who is more than 36 months older). The presumptive sentence for this offense (a severity level VIII offense) by a person with defendant's criminal history score (six or more) is 132 (124 to 140) months in prison. The trial court departed from the presumptive sentence and imposed a prison term of 240 months or 20 years, the statutory maximum. On this appeal from judgment of conviction, the defendant argues that he should be given a new trial because the trial court erred in refusing to admit expert testimony showing that defendant is a chronic alcoholic who suffers from a compulsion to drink. Defendant hoped, in conjunction with this testimony, to rely on the defense of involuntary intoxication. Alternatively, defendant argues that there were no aggravating circumstances justifying the departure and that therefore his sentence should be reduced to the presumptive sentence. We affirm.

Around 9:00 p.m. on March 22, 1981, defendant approached and began talking with a number of 12- to 14-year-old children who were sitting at a picnic table in a park near their homes in South Minneapolis. Defendant offered to buy pop for the children at a neighborhood grocery store and persuaded one of the children, a 12-year-old girl, to accompany him to get it.

On the way, defendant, who appeared to be under the influence of alcohol, grabbed the girl, but she temporarily broke free and started to run. However, defendant caught her, produced a knife, and asked her if she wanted to die. He then forced her to the ground, removed her pants, and forcibly penetrated her vagina with a stick and also with a finger.

After a short time, the victim managed to get up, grab her pants and run.

A subsequent sexual assault examination of the victim revealed (a) the presence of marks and scratches on her neck and legs, (b) the presence of blood stains on her underwear, and (c) the presence of minor injuries in the exterior entrance to her vagina. The injuries to the vagina were consistent with her statement that she had been penetrated by a stick.

1. Defendant's first contention is that the trial court improperly prevented him from offering evidence on and arguing involuntary intoxication to the jury.

This issue was ruled upon by the trial court at the omnibus hearing. The defense counsel proposed to offer evidence concerning defendant's drinking on the day of the

offense and expert testimony that defendant is a chronic alcoholic and also expert testimony concerning what alcoholism means and does to a person. She argued that the purpose of offering the evidence was to establish the defense of involuntary intoxication. The trial court stated that defendant was entitled to present evidence surrounding the occurrence of the offense, including evidence of his intoxication, but that if an issue of intoxication were raised, he would have to instruct the jury on his understanding of the law of intoxication, which was not what defendant argued it should be. Then, in response to a question by defense counsel, the court stated that under the present state of the law, the proposed expert testimony would have to be deemed irrelevant.

On appeal, defendant concedes that the so-called defense of voluntary intoxication set forth in Minn.Stat. § 609.075 (1980) [1] has no application to his case because, under *State v. Lindahl,* 309 N.W.2d 763 (Minn. 1981), the offense with which he was charged and of which he was convicted is a general intent, not a specific intent crime.

█ However, defendant argues that the combined effect of two cases of this court— *State v. Fearon,* 283 Minn. 90, 166 N.W.2d 720 (1969), and *State v. Altimus,* 306 Minn. 462, 238 N.W.2d 851 (1976)—is that a chronic alcoholic's intoxication is really involuntary intoxication and that therefore the defense of involuntary intoxication, which applies to all crimes, even general intent crimes, can be raised whenever a chronic alcoholic commits a crime while intoxicated. In making this argument, defendant relies heavily upon a case comment on *Altimus.* Comment, *Criminal Law: Chronic Alcoholism as a Defense to Crime,* 61 Minn.L.Rev. 901 (1977).

The case comment misreads *Fearon* and *Altimus.* *Fearon* held that a person suffering from chronic alcoholism could not be convicted of drunkenness under Minn.Stat. § 340.96 (1969) (later repealed), even though the drunkenness was self-induced. However, this court has never given any indication that *Fearon* should be extended and that a chronic alcoholic's intoxication is, under certain circumstances, a defense to crimes other than drunkenness.

Indeed, in *Altimus,* we made it clear that we considered self-induced intoxication by a chronic alcoholic to be voluntary intoxication, not involuntary intoxication. We stated:

> The general rule in Minnesota is that voluntary intoxication is a defense to a criminal charge other than drunkenness only if a specific intent or purpose is an essential element of the crime charged and the trier of fact concludes that the defendant's intoxication deprived him of the specific intent or purpose requisite to the alleged defense.

306 Minn. at 466, 238 N.W.2d at 855 (footnotes omitted). We then proceeded to discuss the four kinds of involuntary intoxication which have been recognized: "[c]oerced intoxication, pathological intoxication, intoxication by innocent mistake, and unexpected intoxication resulting from the ingestion of a medically prescribed drug." 306 Minn. at 468, 238 N.W.2d at 856. We then went on to state that any one of these kinds of involuntary intoxication is a defense to a charge of a general or specific intent crime if the intoxication made the defendant temporarily insane at the time of the acts forming the basis of the charge. In conclusion, we noted that involuntary intoxication is a "most unusual condition." 306 Minn. at 472, 238 N.W.2d at 858.

In conclusion, then, the *Altimus* case made it clear that the defense of involuntary intoxication applies only to the four stated kinds of involuntary intoxication and

---

1. That statute provides:
   An act committed while in a state of voluntary intoxication is not less criminal by reason thereof, but when a particular intent or other state of mind is a necessary element to constitute a particular crime, the fact of intoxication may be taken into consideration in determining such intent or state of mind.

not to self-induced involuntary intoxication of a chronic alcoholic.[2]

The argument that *Altimus* should be extended to cover the intoxication of chronic alcoholics is a weak one that, to our knowledge, has not been accepted in any jurisdiction. In the words of one commentator:

> This approach should be rejected. Most inebriated persons do not commit crimes, despite alcohol's effect of loosening their inhibitions. Those inebriates who *do* intentionally cause harm deserve punishment. Moreover, it would be extraordinarily difficult to determine whose alcoholism is sufficiently "chronic" or which defendant's drunken violence was sufficiently unanticipated to merit an intoxication defense. Because clear guidelines would be impossible to draw, jury discretion would be substantial. This could lead to inconsistent and discriminatory results, as well as a burdensome increase in spurious claims by defendants hoping for a sympathetic jury. Finally, society's interest in safety would be ill-served by weakening sanctions against inebriates who intentionally cause harm to others, especially since their crimes often involve violent attacks on the person.

Note, *Alcohol Abuse and the Law,* 94 Harv. L.Rev. 1660, 1685 (1981) (emphasis in original) (footnote omitted).[3]

2. Defendant's other contention is that the trial court erred in departing from the presumptive sentence.

The trial court cited four factors which it believed were aggravating factors justifying upward departure: (a) the particular vulnerability of the victim due to age and reduced physical capacity; (b) the particular cruelty with which defendant committed the offense, (c) the fact that this was defendant's second conviction for an offense in which the victim was injured, and (d) the trial court's belief that defendant is a poor candidate for rehabilitation and that the presumptive sentence does not adequately protect society in this case. Three of these (a, b and c) are aggravating factors listed in the nonexclusive list of aggravating factors provided by the Sentencing Guidelines Commission. *See* Minnesota Sentencing Guidelines and Commentary, II.D.2.b(1), (2) and (3) (1982).

■ The state, in responding to the defendant's arguments on appeal, does not rely on factors (a) and (d). A number of our cases, including *State v. Partlow,* 321 N.W.2d 886 (Minn.1982), and *State v. Luna,* 320 N.W.2d 87 (Minn.1982), make it clear that, generally, the legislature has taken the vulnerability of the victims of rape, including their age, into account in distinguishing rape offense by degree. Since the offense contained an age element, it would be unfair in this case to consider that factor again as a departure factor. As for defendant's unamenability to rehabilitation, that may be a consideration in determining whether or not to depart dispositionally, but it generally should not be a consideration in determining whether to depart durationally.

■ The state does argue that the defendant committed the instant offense with particular cruelty and also argues that this conviction was defendant's second conviction for an offense in which the victim was injured.

In *State v. Luna,* the defendant was convicted of criminal sexual conduct in the first degree under Minn.Stat. § 609.342(c), (d) (1980) (sexual penetration accomplished by (c) causing complainant to reasonably to

---

**2.** *Cf. Robinson v. Lamott,* 289 N.W.2d 60, 63 (Minn.1979), where we held that "although an alcoholic's consumption of liquor may be involuntary in that he does not drink by choice, *see, State v. Fearon, supra,* his alcoholic consumption is nonetheless voluntary within the meaning of" cases which bar recovery under the Civil Damage Act to persons injured as a result of their own voluntary intoxication.

**3.** A more neutral approach, which would simply allow the jury to consider evidence of intoxication as one factor bearing on the defendant's intent on all crimes, general intent crimes included, is proposed by the authors of this note. 94 Harv.L.Rev. at 1687. Defendant alternatively proposes the adoption of such an approach.

fear imminent great bodily harm or by (d) using or threatening to use a dangerous weapon). In upholding a limited (less than double) durational departure, we stated:

> The legislature, to a great extent, has taken the vulnerability of the victims of rape and factors, such as the use of knives, into account in distinguishing rape offenses by degree. Each case must, nonetheless, be considered on its own. *State v. Martinez,* 319 N.W.2d 699 (Minn. 1982). Here, the evidence did not establish that defendant was in a position of authority over complainant (see Minn. Stat. § 609.341, subd. 10 (1980)). If the state thought that it could prove position of authority, it would have charged defendant under section 609.342(b). As for the age of the victim, it is true that the legislature has considered age of the victim in distinguishing sex offenses by degree and it is also true that, regardless of our ages, we are all equally vulnerable in the face of a knife. Notwithstanding this, a qualitative assessment of what defendant did justifies the conclusion that this case is sufficiently different in degree from other cases of first-degree criminal sexual conduct to justify the limited departure here. Defendant did not just use a knife and he did not just threaten to harm complainant; rather, he did both these things and his threat was a particularly offensive one—he threatened to stick the scissors into the victim's vagina and cut her. The combination of these facts with other facts, including the fact that the victim was only 13 years old, makes this case sufficiently different in degree to justify the limited upward departure.

320 N.W.2d at 89–90. In this case, the defendant, who was 33 at the time, did not simply sexually penetrate a person who was under age 13. If that was all that he had done, then one could not say that he committed the offense with particular cruelty. In fact, however, defendant did considerably more. He wielded a knife and threatened to kill the victim, he threw her to the ground, and he forced her to submit to painful, injurious penetration with a stick, as well as with his finger. Making a qualitative assessment of what defendant did, we conclude that the trial court appropriately justified the upward departure on the ground of particular cruelty.[4]

In conclusion, we hold that durational departure was justified. Under *State v. Evans,* 311 N.W.2d 481 (Minn.1981), the 20-year sentence clearly was proper since 20 years is less than two times the presumptive sentence.

Affirmed.

YETKA, J., took no part in the consideration or decision of this case.

---

4. The state also argues that this case fits within listed aggravating factor (3), which is that "The current conviction is for an offense in which the victim was injured and there is a prior felony conviction for an offense in which the victim was injured." There is no doubt that the victim in this case was injured. In fact, if defendant had been charged with criminal sexual conduct in the first degree under section 609.342(e)(i) (sexual penetration accomplished by force or coercion and accompanied by personal injury to the complainant), he probably could have been convicted even if the victim had not been under 13 years of age because the pain and injury the victim suffered were sufficient to constitute "personal injury" under that provision. *State v. Bowser,* 307 N.W.2d 778 (Minn.1981) (upholding a conviction under this subdivision where the complainant testified that she felt considerable pain when the defendant first penetrated her and where the evidence also established that she suffered some physical injury in the form of laceration of her hymen). However, it is doubtful that the state met its burden of establishing that one of defendant's prior felony convictions was for an offense in which the victim was injured. The state relies not on one, but two, 1978 felony convictions in California for rape by force and oral copulation with a victim under age 14. Without knowing more about these convictions in addition to their titles, we would be reluctant to conclude that the state met its burden of proving that one of defendant's prior felony convictions was for an offense in which the victim was injured.