**Richard W. TAYLOR, Appellant,**

v.

**STATE of Minnesota, Respondent.**

**No. C5–02–746.**

Supreme Court of Minnesota.

Nov. 6, 2003.

Mike Hatch, Minnesota Attorney General, Susan Gaertner, Ramsey County Attorney, Jeanne L. Schleh, Assistant Ramsey County Attorney, St. Paul, MN, for Respondent.

Susan J. Andrews, Assistant State Public Defender, Theodora Gaitas, Assistant State Public Defender, Minneapolis, MN, for Appellant.

## OPINION

ANDERSON, RUSSELL A., Justice.

Appellant Richard Taylor entered a guilty plea to criminal sexual conduct in the first degree, in violation of Minn.Stat. § 609.342, subd. 1(a) (2002) (engaging in sexual contact with a person under 13 years of age as defined in section 609.341, subd. 11(c) (2002) and the actor is more than 36 months older than the complainant). By statute, the presumptive minimum sentence for this offense is 144 months, that is, 12 years. Minn.Stat. § 609.342, subd. 2(b) (2002). The district court granted the state's motion to depart durationally, imposing an executed term of 180 months, a 15-year term. We reduce the sentence to the statutory presumptive term, 144 months.

Taylor was charged by complaint with one count of first-degree criminal sexual conduct for engaging in sexual contact with a three-year-old child who was enrolled in a daycare program operated by Taylor's wife in the family home. The charged count alleged that one incident of criminal sexual misconduct occurred on March 16, 2001. Taylor pleaded guilty as charged.[1] During the factual basis inquiry portion of the plea hearing, through leading questions posed by the state, Taylor admitted that he rubbed his penis on the child's genital area and ejaculated onto a towel. He also admitted that "this hap-

1. Prior to the entry of the plea, the court explained to Taylor that at sentencing he would be free to argue for a dispositional or downward durational departure and the state would cap its request for an upward durational departure at 180 months. Taylor then was sworn in, and the following exchange occurred:

THE COURT: To the charge from Ramsey County, criminal sexual conduct in the first degree, with a maximum sentence of thirty years and/or a fine of forty thousand dollars, on March 16, 2001, how do you plead, guilty or not guilty.

THE DEFENDANT: Guilty.

pened" one other time, although he could not recall exactly when the other incident occurred.[2]

At sentencing, the state moved for a departure from the 144-month presumptive executed sentence to 180 months; and Taylor, a first-time offender, argued for a dispositional departure. The district court sentenced Taylor to an executed term of 180 months, citing as reasons for the departure multiple incidents of abuse, violation of a position of trust and particular vulnerability of the victim due to age. Taylor's sentence also included a five-year conditional release term, restitution and a fine. Taylor challenged the durational departure through postconviction proceedings, seeking a reduction of his sentence to the presumptive 144-month term. The postconviction court denied relief. On appeal, the court of appeals affirmed. We granted review.

## I.

Minnesota has a commission-based sentencing guidelines system, the goals of which currently are to assure public safety, promote uniformity and proportionality in sentencing, provide greater honesty or "truth in sentencing," and coordinate sentencing practices with correctional resources. Minn.Stat. § 244.09, subd. 5 (2002); Minnesota Sentencing Guidelines I; *see also* Richard S. Frase, *The Role of the Legislature, the Sentencing Guidelines Commission, and Other Officials under the Minnesota Sentencing Guidelines*, 28 Wake Forest L.Rev. 345, 365 (1993). The guidelines commission, in addition to developing and modifying the sentencing guidelines, collects and analyzes information on actual sentencing practices as compared to the sentences recommended by the guidelines and makes recommendations to the legislature on various aspects of sentencing. Minn.Stat. § 244.09, subd. 6 (2002).

The sentencing guidelines are represented by a grid, currently with eleven categories of offense severity levels for the offense of conviction on the vertical axis and seven offender criminal history scores on the horizontal axis. Minnesota Sentencing Guidelines IV. The presumptive guidelines sentence is usually located in the cell of the guidelines grid where the offender's criminal history score and offense severity level intersect. *Id.* II.C. As a general rule, the guidelines contemplate that offenders with similar criminal backgrounds who are convicted of similar crimes receive similar sentences; and offenders with more extensive criminal records who commit the most serious and violent offenses receive the greater sentences.

Initially, the guidelines ranked first-degree criminal sexual conduct as a severity level eight offense with a presumptive executed sentence of 43 months for an offender with a zero criminal history score. Minnesota Sentencing Guidelines IV, V (1980). In 1989, in response to public pressure for substantially increased penalties, the guidelines commission doubled sentence durations at severity levels seven and eight for first-time offenders and in-

---

2. During the factual basis inquiry, the following exchange between the prosecutor and Taylor took place:

> Q. Mr. Taylor, how many times has this happened?
> A. Twice.
> Q. When was the second or other incident?
> A. I don't know.
> Q. Was it within a month of this one?
> A. Probably within a month.
> Q. Where did that one happen?
> A. Same bathroom.
> Q. Was the behavior the same as—
> A. Yes.

The state did not charge Taylor with the earlier incident but did refer to it in the probable cause portion of the complaint.

creased, to a somewhat lesser extent, durations for other offenders. Frase, *supra* at 360. Consequently, the presumptive sentence for first-degree criminal sexual conduct for a first-time offender was increased from 43 months to 86 months. Minnesota Sentencing Guidelines IV, V (1989). To accommodate the increase in presumptive sentences, the guidelines commission adopted a criminal history weighting scheme aimed, in part, at reducing presumptive commitments for certain property offenders. Frase, *supra* at 360; Minnesota Sentencing Guidelines II.B.03 (1989).

Prior to August 1, 1994, however, the offense of which Taylor was convicted was a variety of second-degree criminal sexual conduct. Minn.Stat. § 609.343, subd. 1(a) (1992) (sexual contact with a child under the age of 13, where the actor is more than 36 months older than the child). The guidelines ranked the offense at severity level six with a presumptive stayed sentence of 21 months for a first-time offender. Minnesota Sentencing Guidelines IV, V. (1993). In 1994, the legislature distinguished sexual contact involving genital-to-genital contact with a child under the age of 13 years, making it a first-degree offense. Act of May 10, 1994, ch. 636, art. 2, §§ 32, 34, 1994 Minn. Laws 2205–06 (codified at Minn.Stat. § 609.342, subd. 1(a) (1994)). The guidelines ranked the first-degree sexual contact as a severity level seven offense with a presumptive executed sentence of 48 months for a first-time offender, distinguishing first-degree sexual contact from first-degree sexual penetration, the severity level eight offense with an 86-month presumptive prison term. Minnesota Sentencing Guidelines IV, V (1994).

In 2000, the legislature amended the first-degree criminal sexual conduct statute to provide for a minimum presumptive sentence of 144 months, or 12 years. Act of April 3, 2000, ch. 311, art. 4, § 2, 2000 Minn. Laws 211 (codified at Minn.Stat. § 609.342, subd. 2(b) (2000)). Because the 12-year presumptive term applied to the contact variety of first-degree criminal sexual conduct as well as the penetration variety, the net effect was that the presumptive sentence for Taylor's offense increased from 48 months to 144 months. The low end of the presumptive range for second-degree unintentional murder is 144 months. Minnesota Sentencing Guidelines IV, V (2002).[3]

 "Underlying the [g]uidelines is the notion that the purposes of the law will not be served if judges fail to follow the [g]uidelines in the 'general' case." *State v. Garcia,* 302 N.W.2d 643, 647 (Minn.1981). Accordingly, courts may depart from the guidelines only when substantial and compelling circumstances are present. *Id.* (citing Minnesota Sentencing Guidelines II.D.); *see also State v. McIntosh,* 641 N.W.2d 3, 8 (Minn.2002) (substantial and compelling circumstances must be present to warrant departures from the presumptive guidelines sentence). "Substantial and compelling circumstances" are those circumstances that make the facts of a particular case different from a typical case. *State v. Peake,* 366 N.W.2d 299, 301

---

**3.** In 2002, the guidelines added a new offense category for felony DWI and ranked the offense at a severity level of seven; this in turn, led to the elevation of what was formerly the level seven category, where the first-degree sexual contact crime was ranked, to level eight and the former category eight, where the other first-degree sexual conduct crimes were ranked, to level nine. The presumptive sentences for first-time offenders in categories eight and nine remained at 48 months and 86 months respectively, with exceptions for the statutory presumptive minimum terms for specified criminal sexual conduct crimes. Minnesota Sentencing Guidelines IV, V (2002).

(Minn.1985) (citing *State v. Back*, 341 N.W.2d 273, 276 (Minn.1983)). If a departure is taken, the court must provide written reasons "which specify the substantial and compelling nature of the circumstances, and which demonstrate why the sentence selected in the departure is more appropriate, reasonable or equitable than the presumptive sentence." Minnesota Sentencing Guidelines II.D. We review for abuse of discretion the decision of a district court to depart from the presumptive sentence established by the guidelines. *McIntosh*, 641 N.W.2d at 8. "If the reasons given are improper or inadequate and there is insufficient evidence of record to justify the departure, the departure will be reversed." *Id.* (quoting *Williams v. State*, 361 N.W.2d 840, 844 (Minn.1985)).

## II.

▮ Here, the district court concluded there were three aggravating factors warranting an upward departure: (1) "multiple incidents of abuse," (2) abuse of a position of trust and (3) victim vulnerability. It is generally proper for the court to consider the conduct underlying the charge of which the defendant is convicted; but reliance on other offenses that are not part of the charge and of which the defendant was not convicted is not a permissible basis for durational departure. *State v. Peterson*, 329 N.W.2d 58, 60 (Minn.1983) (citing *State v. Hagen*, 317 N.W.2d 701, 703 (Minn.1982), and *State v. Barnes*, 313 N.W.2d 1, 3 (Minn.1981)); *cf. State v. Simon*, 520 N.W.2d 393, 394 (Minn.1994) (explaining that court may not base durational departure from presumptive sentence on evidence that defendant could have been convicted of uncharged offense); *State v. Arnold*, 514 N.W.2d 801, 802

(Minn.1994) (stating that court cannot deprive defendant of guilty plea bargain by relying on underlying conduct supporting dismissed charge). To use prior uncharged sex offenses would amount to improper sentencing for crimes of which the defendant was not convicted. *State v. Chase*, 343 N.W.2d 695, 697 (Minn.App. 1984) (citing *Peterson*, 329 N.W.2d at 60 and *State v. Brusven*, 327 N.W.2d 591, 593–94 (Minn.1982)).[4]

▮ It is true, as the dissent indicates, that in certain criminal sexual conduct cases, multiple acts of sexual contact and penetration have served as aggravating factors for enhancement purposes; but in those cases the various acts of sexual abuse were a part of the offense of which the defendant was charged and convicted. *E.g., State v. Heinkel*, 322 N.W.2d 322, 324 (Minn.1982) (victim forced to submit to various types of sexual contact and penetration over two-hour period); *State v. Martinez*, 319 N.W.2d 699, 700 (Minn. 1982) (over two-hour period, victim compelled to engage in various types of sexual contact and penetration, culminating in ejaculation onto her body). If, however, the evidence "only supports defendant's guilt of some other offense but does not support the conclusion that the defendant committed the instant offense for which he is being sentenced in a particularly serious way, then it cannot be relied upon as a ground for departure." *State v. Ott*, 341 N.W.2d 883, 884 (Minn.1984) (citations omitted); *State v. Northard*, 348 N.W.2d 764, 769 (Minn.App.), *rev. denied* (Minn. Sept. 5, 1984) (explaining that uncharged offense cannot justify a departure). Ac-

---

4. The dissent distinguishes cases in which conduct based upon dismissed charges could not be the basis for additional confinement; but it would be even more true that conduct that is never charged cannot be the basis for additional confinement.

cordingly, reliance on a prior uncharged sex offense here was improper.[5]

Similarly, the victim's vulnerability both as to age and the defendant's position of authority or trust were inappropriate bases for departure where those facts were already taken into account by the legislature in determining the degree of seriousness of the offense. *Hagen,* 317 N.W.2d at 703 (explaining that age and position of trust unavailable as departure factors for criminal sexual contact with child under age of 13 and actor is 36 months older); *see also Peterson,* 329 N.W.2d at 60 (stating that youth and position of authority impermissible grounds for departure from presumptive sentence for first-degree criminal sexual conduct); *State v. Johnson,* 327 N.W.2d 580, 583 (Minn.1982) (explaining that it is unfair to consider age for departure purposes when offense contains an age element).[6] The legislature has set absolute vulnerability for the offense involved here at 13 years, and we are not inclined to tamper with that. It is true that in *State v. Partlow,* 321 N.W.2d 886 (Minn.1982), we noted "the absolute vulnerability of the 2-year, 10-month-old victim" would justify "an aggravation of sentence." *Id.* at 887, n. 1. But *Partlow* also involved particular cruelty and was decid-

ed 20 years ago, during the early stages of the determinate guidelines system in which "real time" sentences revealed relatively short terms typically served and the presumptive term for first-degree criminal sexual conduct was 43 months. Here, although Taylor's conduct was reprehensible and regrettable, we cannot say that it was an atypical first-degree offense warranting a durational departure from the statutory presumptive 12-year term.

Certainly it is the legislature that defines the conduct that constitutes a criminal offense and fixes the punishment. *State v. Olson,* 325 N.W.2d 13, 17–18 (Minn.1982) (citing *State v. Meyer,* 228 Minn. 286, 37 N.W.2d 3 (1949)). But we are charged with the responsibility of ensuring that the punishment "is not inconsistent with statutory requirements, unreasonable, inappropriate, excessive, unjustifiably disparate or not warranted by the findings of fact issued by the district court." Minn.Stat. § 244.11, subd. 2(b) (2002). Over the last two decades since our initial decisions permitting departures from the guidelines presumptive sentence in first-degree criminal sexual conduct cases, we have seen much

---

5. Furthermore, allowing a departure based upon the elicitation of an admission to an uncharged prior offense during a factual basis inquiry at the guilty plea hearing undermines the system. A valid guilty plea must be accurate, voluntary and intelligent. *State v. Ecker,* 524 N.W.2d 712, 716 (Minn.1994). A proper factual basis must be established for a plea to be accurate. *Id.* The purpose of the accuracy requirement is to protect the defendant from the conviction of a greater offense by guilty plea than would have been possible had he exercised his right to trial. *State v. Trott,* 338 N.W.2d 248, 251 (Minn.1983). Allowing the state to lay the groundwork for sentencing enhancement during a factual basis inquiry by asking about other offenses not charged places the defendant in a worse position than if he had gone to trial and exercised his Fifth Amendment right to remain silent.

6. Experience has also shown that courts tend to view criminal sexual assaults by strangers as more serious and aggravated, thereby justifying durational departures. *See, e.g., State v. Mortland,* 399 N.W.2d 92, 94 (Minn.1987) (child snatched from neighborhood park); *State v. Norton,* 328 N.W.2d 142, 144 (Minn. 1982) (young child snatched from own yard). Departures are intended for a small number of cases. *State v. Misquadace,* 644 N.W.2d 65, 71 (Minn.2002). Inasmuch as the guidelines endeavor to limit departures to those circumstances that make the facts of a particular case different from a typical case, it would be difficult in most cases to reconcile departures based on both stranger sexual assaults and the more typical position-of-trust assaults.

change in the laws relating to sex offender risk management, including not only increased presumptive and mandatory sentences for certain sex offenders, but also minimum conditional release terms that increase the term of supervision after release from prison; mandatory registration, community notification and DNA sample requirements that enhance monitoring capability of sex offenders in the community; and finally, expanded possibility of civil commitment for those professionally assessed as being too dangerous to be released into society without successful treatment intervention. Minn.Stat. §§ 609.108, 609.109 (2002) (enhanced statutory maximums, mandatory minimums and mandatory conditional release terms); Minn.Stat. § 243.166 (2002) (predatory offender registration); Minn. Stat. § 244.053 (2002) (community notification of release of sex offenders); Minn. Stat. § 609.117 (2002) (mandatory provision of DNA samples from certain offenders including those convicted of criminal sexual conduct); Minn.Stat. § 253B.02, subds. 18b, 18c (2002) (civil commitment). It is within this framework of risk management tools not in place at the time of our prior decisions that district courts now exercise discretion in sentencing and that we discharge our responsibility under Minn.Stat. § 244.11 in reviewing upward durational sentencing departures.

In conclusion, for this case, we hold that the departure from the statutory presumptive minimum executed sentence was improper. Accordingly, Taylor's executed sentence is reduced to 144 months, the statutory presumptive minimum term.

Affirmed as modified.

MEYER, Justice (dissenting).

I respectfully dissent. I would hold that the district court erred in relying on two of the three aggravating factors to support an upward departure in Taylor's sentence, and remand for reconsideration of the departure in light of the remaining factor.

I would analyze this case under our well-accepted principle of appellate review that a district court's sentencing departure is evaluated for an abuse of discretion. *See State v. Thao*, 649 N.W.2d 414, 421 (Minn. 2002) (stating decision to depart from presumptive sentence is within district court's discretion if substantial and compelling reasons are articulated); *State v. Misquadace*, 644 N.W.2d 65, 68 (Minn.2002) (stating district court's decision to depart will not be disturbed absent abuse of discretion); *State v. Pickett*, 358 N.W.2d 38, 39 (Minn.1984) (stating decision to depart is for the trial court to exercise). This discretion is no mere formality. As with evidentiary issues, the trial judge "sits with a unique perspective on all stages of a case, including sentencing, and the trial judge is in the best position to evaluate the offender's conduct and weigh sentencing options." *State v. Hough*, 585 N.W.2d 393, 397 (Minn.1998).

Here, I concur with the majority's view that two of the factors—the age of the victim and the abuse of a position of trust—were impermissible reasons for departure. I would not conclude, however, that the multiple incidents of abuse that occurred in this case cannot support an upward departure.

The complaint against Taylor noted that the victim in this case, three-year-old L.E.P., disclosed that Taylor's assaults on her had "happened more than one time." The majority offers a number of reasons why Taylor's admission of multiple incidents of abuse cannot support an upward departure. The decision notes that a sentencing court may not rely upon offenses that do not form the basis of a conviction. *See, e.g., State v. Hagen*, 317 N.W.2d 701, 703 (Minn.1982). Similarly, the majority asserts that a durational departure may

not be based upon the possibility that the defendant could have been convicted of an uncharged offense. *State v. Simon*, 520 N.W.2d 393, 394 (Minn.1994). Finally, the majority, relying upon *State v. Arnold*, 514 N.W.2d 801, 802 (Minn.1994), holds that Taylor cannot be deprived of the bargain of his guilty plea by the trial court's reliance on underlying conduct supporting a dismissed charge.

This last reason is the easiest to dismiss. *Arnold* involved a defendant charged with five offenses committed during three robberies. 514 N.W.2d at 801. One of the robberies involved an allegation that Arnold had sexually touched the victim during the crime. *Id.* Arnold entered into a plea bargain in which he admitted to the robberies in exchange for dismissal of the sex offense charge, a charge that he had consistently denied. *Id.* In sentencing Arnold, the trial court departed upward and based the departure on the allegation Arnold had sexually touched a victim during the robbery. 514 N.W.2d at 802. The situation in *Arnold*, then, was one where the trial court impermissibly relied upon a dismissed allegation—the dismissal of which was part and parcel of the plea bargain.

Such a scenario is obviously not the case here. Unlike *Arnold*, during his plea hearing Taylor admitted to another earlier incident. It was therefore no mere unproven allegation, as was the case in *Arnold*. Moreover, our concern in *Arnold* centered around the fact that the trial court's action essentially deprived Arnold of the benefit of his plea bargain. *Arnold* at 801–02. Here, Taylor received a sentence within the range he bargained for.

The majority's reliance on *State v. Peterson* is similarly misplaced. In *Peterson*, the defendant was charged with criminal sexual conduct, and *Spreigl* evidence was introduced to show that Peterson had used his position of authority to induce young people to have sexual contact with him. 329 N.W.2d 58, 59 (Minn.1983). In sentencing Peterson, the trial court imposed consecutive, rather than concurrent, sentences. *Id.* The trial court stated on the record that the consecutive sentence was permissible because Peterson had used his position of authority to induce both the victim of the charged offense and the victims of the *Spreigl* offenses. *Id.* We reversed, stating that "in relying on the *Spreigl* offenses, the trial court relied on other offenses with which defendant apparently was not charged and of which defendant was not convicted." *Id.* at 60.

Taylor's case is dissimilar. In contrast to the facts set forth in *Peterson*, proof of Taylor's earlier criminal sexual conduct was provided not by untested, uncharged, possibly disputed *Spreigl* evidence relating to victims other than L.E.P., but instead by Taylor's own admission at his plea hearing that he had assaulted L.E.P. on more than one occasion.

A third case relied upon by the majority, *State v. Simon*, is also inapposite. In *Simon*, the defendant pled guilty to second-degree assault after shooting his victim. *Simon*, 520 N.W.2d at 393–94. Second-degree assault, however, contains two statutory provisions, one of which is less severe than the other as it does not include the element of substantial bodily harm. *Id.* at 394. *See also* Minn.Stat. § 609.222 (1992). Simon was charged under the less severe provision. *Simon*, 520 N.W.2d at 394. At Simon's sentencing, however, the state requested the trial court to impose a sentence double that of the presumptive sentence and to base the departure on the fact that the assault resulted in substantial bodily harm to the victim. *Id.*

In reversing, we noted that we disapproved of the state's actions and indicated that prosecutors were not free to circum-

vent the strictures of the sentencing guidelines by charging Simon under a less serious provision and then using an element of the more serious provision to request an enhancement for sentencing. *Id.* We further cautioned that "the state should not be able to use the fact that it might have been able to obtain a conviction of a greater offense * * * to support the departure." *Id.* Thus, *Simon* is most properly read as a caution against deliberate undercharging by the state.

There is no allegation that undercharging is what occurred here. Certainly L.E.P.'s allegation appears in the complaint, but there is no contention before us that Taylor could have been convicted of both crimes. Taylor was not charged under a different statutory provision that considers multiple incidents as an element, nor could he have been. That provision, Minn. Stat. § 609.342, subd. 1(h)(iii) (2002), applies only to those individuals who have a "significant relationship" to the victim, defined as relatives or adults who reside, at least intermittently, in the same dwelling as the victim. *See* Minn.Stat. § 609.341, subd. 15 (2002). So, unlike *Peterson*, this is not a case where Taylor would serve a longer sentence if charged under another applicable provision. Quite simply, there was no other applicable provision.

The majority correctly notes that generally "the sentencing court may not consider evidence that points to the defendant's guilt of some other offense but does not support the conclusion that the defendant committed the instant offense, for which he is being sentenced." *State v. Cermak*, 344 N.W.2d 833, 837 (Minn.1984); *see also State v. Ott*, 341 N.W.2d 883, 884 (Minn. 1984). However, this does not necessarily suggest that the sentencing judge's reliance on the prior uncharged assault was improper. If the defendant admits to the underlying conduct, a sentencing court may generally consider the course of conduct underlying an offense including uncharged conduct "in order to reach the conclusion that the defendant's conduct was sufficiently serious to justify the departure." *Cermak*, 344 N.W.2d at 838. In this case, Taylor admitted to committing the earlier assault. The uncharged assault involved the same victim and the same behavior, and occurred within approximately a month of the second assault. These facts are sufficient to permit consideration of the earlier assault as part of Taylor's course of conduct. It seems ironic and incongruent that by today's holding we allow for upward durational departures for multiple penetrations of one victim over the course of several hours, while barring upward durational departures for admitted sexual contact of one victim occurring on separate days.

Accordingly, I would hold that an upward durational departure was appropriate, but would remand and direct the district court to reconsider the sentence without regard to the factors of age of the victim and the abuse of a position of trust.

BLATZ, Chief Justice (dissenting).

I join in the dissent of Justice Meyer.