STATE of Minnesota, Respondent,

v.

Charles Conrad HAGEN, Appellant.

No. C0–02–1318.

Court of Appeals of Minnesota.

May 25, 2004.

Mike Hatch, Attorney General, and Susan Gaertner, Ramsey County Attorney, Darrell C. Hill, Assistant County Attorney, St. Paul, MN, for respondent.

John M. Stuart, State Public Defender, Rochelle R. Winn, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by WILLIS, Presiding Judge; SCHUMACHER, Judge; and ANDERSON, Judge.

## OPINION

ROBERT H. SCHUMACHER, Judge.

The supreme court has remanded the appeal of Charles Conrad Hagen from his sentence for first-degree criminal sexual conduct for reconsideration in light of the court's opinion in *Taylor v. State*, 670 N.W.2d 584 (Minn.2003). This court ordered supplemental briefing, in which Hagen argues that the less-than-double upward departure in this case was an abuse of discretion. We affirm.

## FACTS

Hagen pleaded guilty in March 2002 to first-degree criminal sexual conduct committed against 13–year–old J.N., an autistic girl who lived in the house in which Hagen rented an apartment. The complaint charged a single count under Minn. Stat. § 609.342, subd. 1(g), which requires that the offender engaged in sexual penetration with a victim under the age of 16 with whom he had a "significant relationship."

The plea agreement, as outlined in the Rule 15 plea petition, provided that Hagen would plead guilty to the offense as charged and be able to "argue down[ward] departure based on amenability to probation." In the guilty-plea hearing, Hagen admitted that he sexually penetrated J.N. Hagen testified that his attorney had discussed with him the "significant relationship" element, which was based on his living in the same residence as the victim.

At sentencing, the district court characterized this case as "one of the more horrendous cases of child sexual abuse that I have seen." The district court sentenced Hagen to 216 months, an upward departure from the presumptive sentence of 144 months. In support of the departure, the court stated:

> The basis for that departure is that you entered the victim's zone of privacy, that being that this took place in her home, and outside of the home for that matter; that it created great psychological and emotional trauma to the victim in this case; and, most importantly, that this child was particularly vulnerable due to her many disabilities.

The court concluded that these factors, along with "the deception that [Hagen] engaged in," supported the departure.

## ISSUE

Was the upward departure an abuse of discretion under *Taylor v. State* 670 N.W.2d 584 (Minn.2003)?

## ANALYSIS

The decision to depart from the presumptive sentence rests within the discretion of the district court and will not be disturbed absent a clear abuse of discretion. *State v. Givens*, 544 N.W.2d 774, 776 (Minn.1996). But the sentencing court has no discretion to depart unless aggravating or mitigating factors are present. *State v. Spain*, 590 N.W.2d 85, 88 (Minn.1999).

The supreme court in *Taylor* reduced a less-than-double upward departure for first-degree criminal sexual conduct to the presumptive 144–month sentence. 670 N.W.2d at 585. The court first rejected the three aggravating circumstances cited by the district court in that case: (1) "multiple incidents of abuse"; (2) abuse of the defendant's position of trust; and (3) vulnerability of the victim due to age. *Id.* at

588–89. The first factor was rejected because the complaint charged only a single incident of sexual abuse, and the supreme court concluded it would be unfair to use "prior uncharged sex offenses" to depart. *Id.* at 588. The last two factors were rejected because they were "facts [that] were already taken into account by the legislature in determining the degree of seriousness of the offense." *Id.* at 589. Finally, the supreme court noted the many changes in the laws relating to sex offenders, including increases in presumptive and mandatory sentences, and implementation of "risk management tools." *Id.* at 589–90. In a general comment on appellate sentence review, the court concluded:

> It is within this framework of risk management tools not in place at the time of our prior decisions that district courts now exercise discretion in sentencing and that we discharge our responsibility under Minn.Stat. § 244.11 in reviewing upward durational sentencing departures.

*Id.* at 590.

The district court here cited the violation of the victim's zone of privacy, the psychological trauma suffered by the victim, and the victim's vulnerability due to multiple disabilities as aggravating factors. None of these factors depends on facts not charged in the complaint or admitted by Hagen. Nevertheless, Hagen argues that these factors do not support the departure.

▉ We agree that violation of the zone of privacy is not an aggravating factor in this case. Hagen lived in the same residence as J.N. A victim's bedroom may constitute a zone of privacy even if the victim lives in the same house as the defendant. *State v. Griffith,* 480 N.W.2d 347, 351 (Minn.App.1992), *review denied* (Minn. Mar. 19, 1992). But in this case, according to the complaint, the offense occurred in Hagen's basement living quarters, not in the victim's bedroom. Hagen's basement apartment is not part of the victim's zone of privacy.

▉ Hagen also argues that the victim's trauma is typical of this type of offense and therefore cannot be used as a basis for departure. *See State v. Cermak,* 344 N.W.2d 833, 839 (Minn.1984). A sexual assault victim's psychological and emotional trauma may support a less-than-double upward departure. *State v. Allen,* 482 N.W.2d 228, 233 (Minn.App.1992), *review denied* (Minn. Apr. 13, 1992). In *Cermak,* the supreme court stated in dictum that it is "arguable" that "there is always psychological injury inflicted on the victim" in a first-degree criminal sexual conduct case involving a victim under the age of 13. 344 N.W.2d at 840. But Hagen cites no case reversing a departure based on this dictum.

Hagen also argues that he did not exploit J.N.'s vulnerability due to autism or the other disabilities implied in the district court's reference to "many disabilities." But the victim-impact statement from J.N.'s mother states that Hagen had known the family since J.N. was five, and knew the family's struggles in dealing with J.N.'s autism, ADHD, behavior disorders, and obsessive-compulsive disorder. It is clear that Hagen knew of J.N.'s disabilities, and it can be inferred that he induced her "consent" to sexual relations by exploiting those disabilities.

Thus, the record supports the district court's reliance on the victim's psychological trauma and her vulnerability due to her disabilities. Hagen argues, however, that these factors were already considered by the legislature in determining the seriousness of the offense, just as the abuse of a position of authority was held to have been legislatively considered in *Taylor.*

But even if a degree of psychological trauma may have been considered typical by the legislature, the psychological trauma to J.N. appears to have been substantial. In the victim-impact statement, J.N.'s mother related that her daughter was attending counseling sessions, had become obsessive about men and their sexual organs to the point of performing a sexual act on a little boy, continued to be devastated by the offense, and to display both fear and anger over it.

The statute under which Hagen was charged does not presume the victim is disabled or vulnerable, except with respect to age. Another statutory provision, not charged here, requires that the victim be "mentally impaired, mentally incapacitated, or physically helpless." Minn.Stat. § 609.342, subd. 1(e)(ii) (2002). J.N.'s autism, ADHD, behavior disorders, and obsessive-compulsive disorder cannot be considered facts already taken into account by the legislature in determining the seriousness of Hagen's offense. Thus, we conclude that both J.N.'s psychological trauma and her multiple disabilities are legitimate aggravating factors that are not barred under *Taylor* as facts already considered by the legislature in defining the seriousness of the offense. But under *Taylor,* we must also consider whether the degree of departure in this case was supported by those aggravating factors.

Before *Taylor* was released, the presence of victim vulnerability due to a disability, combined with another significant aggravating factor such as the psychological trauma in this case, would have supported up to a double departure. *See State v. Douglas,* 501 N.W.2d 694, 698–99 (Minn.App.1993) (affirming double departure for second-degree felony murder based on vulnerability of mentally retarded victim, along with invasion of zone of privacy and particular cruelty), *review de-*

*nied* (Minn. Aug. 16, 1993); *State v. Graham,* 410 N.W.2d 395, 397 (Minn.App.1987) (affirming double departure for first-degree burglary based on handicapped victim's vulnerability, along with particular cruelty, permanent injuries, and atypical seriousness of offense), *review denied* (Minn. Sept. 30, 1987); *Stephens v. State,* 369 N.W.2d 603, 605 (Minn.App.1985) (affirming less than 50% departure for first-degree criminal sexual conduct based on particular vulnerability of young, uneducated victim who had been drinking, as well as particular cruelty and psychological trauma).

The supreme court in *Taylor* cited changes in "risk management tools" unrelated to sentencing durations as one reason for heightened appellate scrutiny of sentencing departures. 670 N.W.2d at 590. Many of these "risk management tools," such as registration, DNA sampling, community notification, and the possibility of civil commitment, while they relate to public safety, do not affect the length of the offender's sentence. Traditionally, public safety was not a permissible aggravating factor to be used in determining the length of sentence. *See State v. Hagen,* 317 N.W.2d 701, 703 (Minn.1982) (holding defendant's future dangerousness could not be used to support durational departure). And *Taylor* indicates that this court may recognize that public safety, although a factor the legislature may have considered in determining the presumptive or mandatory minimum sentence, is also being addressed by provisions other than those affecting sentence durations.

■ *Taylor* requires heightened scrutiny of upward departures in first-degree criminal-sexual-conduct cases due to changes in the laws relating to sex offenders, including these "risk management tools" unrelated to sentence duration. 670 N.W.2d at 590. It would be improper to

depart upwards in sentencing on the assumption that only an increased prison sentence can adequately serve public safety. But even under this heightened scrutiny, we conclude the aggravating factors present here, which would have supported up to a double departure before *Taylor*, remain sufficient to support the 50% departure imposed.

## DECISION

The district court did not abuse its discretion in imposing a 50% upward departure.

**Affirmed.**