*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1779**

State of Minnesota,
Respondent,

vs.

George Cornelius Watkins,
Appellant.

**Filed November 9, 2015
Affirmed
Stoneburner, Judge***

Hennepin County District Court
File No. 27-CR-14-6338

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Jean Burdorf, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Suzanne M. Senecal-Hill, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reilly, Presiding Judge; Schellhas, Judge; and Stoneburner, Judge.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**STONEBURNER**, Judge

Appellant challenges his convictions of third-degree assault and kidnapping, asserting that the district court abused its discretion by admitting relationship evidence that was more prejudicial than probative. Appellant also challenges the district court's reliance on the zone-of-privacy aggravating factor to impose an upward sentencing departure on the kidnapping conviction, arguing that the kidnapping did not occur in the victim's home. We affirm.

## FACTS

Appellant George Cornelius Watkins and B.T. were involved in an off-and-on relationship for about eight years, during which Watkins was convicted of three separate incidents of domestic assault, all of which occurred in 2010. In March 2014, Watkins and B.T. exchanged messages about meeting at a bar, but when Watkins became angry during the exchanges, B.T. decided not to meet him as planned. B.T. nonetheless went to the agreed-on bar with friends, but left when she learned that Watkins was there.

Watkins was outside the bar in a truck with three other people when B.T. left. Watkins told her to get into the truck; he got out of the truck and forced her into the passenger seat. Watkins got into the driver's seat, punched B.T. in the head, asked her why she was not answering her phone, and took her phone away. Watkins drove away, swerving as he continued to punch B.T. He then stopped, sat across B.T.'s lap and continued to hit her in the face 10-20 times. B.T.'s attempts to hit back only made him angrier.

Watkins began driving again but stopped to let the other passengers out. B.T. told Watkins to take her home and that she would not call the police. He then drove her to her home. According to B.T., Watkins then appeared scared because she appeared to be unconscious. He shook her and told her to wake up and she told him that she needed help because her eyes were swollen shut. Watkins helped her into the house, but followed her into the bathroom, closed the door and continued to fight. B.T., believing it would stop the assault, told Watkins that they should go to sleep. He eventually agreed and B.T. went into the bedroom and "passed out."

When B.T. woke up, she went into the bathroom and saw injuries to her face, including damage from Watkins's rings. B.T. thought he had been trying to kill her. Watkins was asleep on the bed fully dressed. B.T., who does not have a landline telephone, took her cell phone out of Watkins's pocket, went into the bathroom and tried to call her mother and her cousin. Her cousin called the police.

The police arrived and observed that B.T. had severe head trauma with both eyes swollen shut and cuts on her face. Watkins was discovered lying under a blanket in a back bedroom and was arrested.

B.T. had a broken nose, fractured bones in her eye, and a concussion. Photographs documented her injuries. In a statement, she admitted that she had been drinking and that she had struck Watkins during the evening. And she admitted that she sent derogatory text messages after the assault to another woman with whom Watkins was involved. B.T.'s statement to the police was consistent with her later trial testimony.

Watkins was charged with third-degree assault, in violation of Minn. Stat. § 609.223, subd. 1 (2012), and two counts of kidnapping, in violation of Minn. Stat. § 609.25, subd. 1(2), (3) (2012).

On the first day of trial, the district court granted Watkins's request to discharge his attorney and to proceed pro se. On the second day of trial, the district court, over objection, granted the state's motion to admit as relationship evidence Watkins's three prior domestic assault convictions. B.T. testified that in the first incident Watkins grabbed her by the neck and dragged her into her house when she was trying to leave; in the next incident he dragged and punched her; and in the third incident he punched her in the face and shoved her head into a wall. The district court instructed the jury on the limited use of this evidence.

S.R., the other woman with whom Watkins had a relationship, testified at trial that she had told B.T. that Watkins no longer wanted to be with B.T. and B.T. had threatened to call Watkins's probation officer and have Watkins sent back to jail. A defense investigator testified that after the incident with B.T., Watkins had a lump on his head, bite marks, and scratches. The district court did not give a self-defense instruction, having informed Watkins that it did not find enough evidence to support such an instruction. In closing, Watkins questioned B.T.'s credibility, arguing that he was not the aggressor, evidenced by scratches on his back, and referring to B.T.'s anger about his other relationship.

The jury found Watkins guilty of third-degree assault and one count of kidnapping to facilitate a felony or flight, but not guilty of kidnapping to commit great bodily harm

4

or terrorize. In special verdict forms, the jury found that B.T. was not released to a safe place and that she suffered great bodily harm during the course of the kidnapping.

Relating to aggravating sentencing factors, the district court informed the jury that it was required to determine whether Watkins's actions occurred in a location where B.T. had a reasonable expectation of privacy. The district court instructed the jury that if Watkins's action occurred in B.T.'s home and if he was not a welcome guest in the home, his criminal action occurred in a place where B.T. had a reasonable expectation of privacy. But if the criminal actions did not occur in her home or he was a welcome guest in the home, the acts did not occur in a place where she had a reasonable expectation of privacy. The district court instructed the jury that the state had the burden to prove beyond a reasonable doubt the existence of any aggravating factor.

In the aggravated-sentencing proceeding, the prosecutor argued that the evidence showed that (1) as to the assault charge, Watkins continued to assault B.T. in the bathroom in her home; and (2) as to the kidnapping charge, Watkins confined B.T. to her home while he continued to assault her and cause her fear, so that she believed she could not get away and she was not able to escape confinement until the police arrived. Watkins argued that B.T.'s home was not within a zone of privacy because he was engaged to her and it was his home as well, although his belongings were not there. The jury found that the kidnapping offense occurred in B.T.'s zone of privacy but found that the assault did not occur in B.T.'s zone of privacy.

The district court sentenced Watkins to 205 months in prison, an upward departure from the presumptive sentence of 95-132 months, on the kidnapping conviction, and

imposed a concurrent, presumptive sentence of 39 months on the assault conviction. This appeal followed.

## DECISION

### 1. Admission of relationship evidence

Watkins first argues that the prejudicial effect of the admission of prior domestic assaults far outweighed any probative value such that Watkins is entitled to a new trial.

This court generally reviews a challenge to the admission of relationship evidence for an abuse of discretion. *State v. Lindsey*, 755 N.W.2d 752, 755 (Minn. App. 2008), *review denied* (Minn. Oct. 29, 2008). A district court may admit evidence of "domestic conduct," including domestic abuse, by a defendant against an alleged victim of domestic conduct unless the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice" to the defendant, "or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Minn. Stat. § 634.20 (Supp. 2013). This evidence is referred to as "relationship evidence." *State v. Matthews*, 779 N.W.2d 543, 549 (Minn. 2010). "Relationship evidence is relevant because it illuminates the history of the relationship between the victim and defendant and may also help prove motive or assist the jury in assessing witness credibility." *Id.* (quotation omitted).

Watkins asserts that because B.T. was not reluctant to testify and fully remembered and recounted her version of events, including her on-again-off-again relationship with Watkins, evidence of the prior domestic assaults had no probative value and was merely evidence of bad character. But a district court need not engage in a separate analysis of the state's "need" for relationship evidence; this factor is considered

6

as part of an assessment of whether the probative value of the evidence outweighs its prejudicial effect. *State v. Bell*, 719 N.W.2d 635, 639 (Minn. 2006).

"When balancing the probative value against the potential prejudice, unfair prejudice is not merely damaging evidence, even severely damaging evidence; rather, unfair prejudice is evidence that persuades by illegitimate means, giving one party an unfair advantage." *Id.* at 641 (quotation omitted). "Evidence that helps to establish the relationship between the victim and the defendant or which places the event in context bolsters its probative value." *State v. Kennedy*, 585 N.W.2d 385, 392 (Minn. 1998). We have held that acts of prior domestic violence are probative of relationship history between a defendant and a victim and provide context in which to examine a victim's credibility. *State v. Meyer*, 749 N.W.2d 844, 849-50 (Minn. App. 2008). Because Watkins challenged B.T.'s credibility at trial, suggesting that she may have fabricated her accusations out of jealousy, we conclude that the prejudicial effect of the testimony did not outweigh its probative value, and the district court did not abuse its discretion by admitting relationship evidence in this case.

### 2. Aggravated sentencing factor

Watkins argues that the district court committed reversible error by relying on the "zone-of-privacy" aggravating factor to enhance his sentence for kidnapping because the kidnapping occurred at the bar and in the truck, which are not zones of privacy for B.T.

This court generally reviews a district court's decision to depart from the sentencing guidelines for an abuse of discretion. *Taylor v. State*, 670 N.W.2d 584, 588 (Minn. 2003). A district court may depart from the guidelines "only when substantial and

7

compelling circumstances are present." *Id.* at 587. "Substantial and compelling circumstances are present when the defendant's conduct in the offense of conviction was significantly more or less serious than that typically involved in the commission of the crime in question." *State v. Abrahamson*, 758 N.W.2d 332, 337-38 (Minn. App. 2008) (quotation omitted), *review denied* (Minn. Mar. 31, 2009). A single aggravating factor may support an upward sentencing departure. *State v. O'Brien*, 369 N.W.2d 525, 527 (Minn. 1985).

Commission of an offense "in a location in which the victim had an expectation of privacy" is included in the Minnesota Sentencing Guidelines' nonexclusive list of aggravating factors that may support an upward sentencing departure. Minn. Sent. Guidelines 2.D.3.b, 2.D.3.b(14) (2013). The "zone of privacy" is generally limited to a victim's home and curtilage. *State v. Thao*, 649 N.W.2d 414, 422 (Minn. 2002).

Here, the jury found that the kidnapping was committed within B.T.'s zone of privacy. We review a sentencing jury's findings for sufficiency of the evidence. *See State v. Rodriguez*, 738 N.W.2d 422, 433 (Minn. App. 2007) (concluding there was sufficient evidence to prove aggravating factors), *aff'd*, 754 N.W.2d 672 (Minn. 2008). We conduct "a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach their verdict." *State v. Clark*, 755 N.W.2d 241, 267 (Minn. 2008) (quotation omitted).

To convict Watkins of kidnapping under Minn. Stat. § 609.25, subd. 1(2), the state was required to prove beyond a reasonable doubt that Watkins confined B.T. or removed

8

her from one place to another, in order to facilitate the commission of a felony or flight. Watkins does not challenge the sufficiency of the evidence supporting the kidnapping conviction, but argues that there is no evidence that the kidnapping occurred within B.T.'s home. B.T. testified that they were in the home less than five minutes before they went to sleep, and Watkins argues that the actions that occurred in B.T.'s home during that time were not criminally significant to the commission of a separate crime and cannot constitute kidnapping. *See State v. Smith*, 669 N.W.2d 19, 32 (Minn. 2003) (holding, in relevant part, that "where the confinement or removal of the victim is completely incidental to the perpetration of a separate felony, it does not constitute kidnapping"), *overruled on other grounds by State v. Leake*, 699 N.W.2d 312, 323 (Minn. 2005). But *Smith*, unlike this case, dealt with the sufficiency of the evidence to support a conviction of kidnapping when a door was "momentarily" blocked during the commission of a murder. *See id.* at 32-33.

The state argues that Watkins's "claim is based on an artificial divide in the continuing course of conduct underlying his convictions," and that the kidnapping did not end when Watkins brought B.T. to her home. The state asserts that the evidence established that B.T. only asked to be taken home because she thought the attack would stop there and that Watkins continued to confine B.T. in her home, where he continued to follow her and assault her. B.T. was not free to leave; Watkins kept her cell phone so she could not call for help, and even when she retrieved her phone, B.T. was afraid to call 9ll directly because she feared being caught by Watkins. The state argues that a rational jury found that B.T. continued to be confined in her home, and this continued confinement in

9

B.T.'s home was not "momentary" or "merely incidental" to the continued assault. We agree that the state established beyond a reasonable doubt that Watkins continued to confine B.T. in her home and that the evidence is sufficient to support the jury's finding that the kidnapping continued in B.T.'s zone of privacy, supporting the upward sentencing departure imposed by the district court.

**Affirmed.**