*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0392**

State of Minnesota,
Respondent,

vs.

Peter Clare Hoagland,
Appellant

**Filed January 17, 2016
Affirmed in part, reversed in part, and remanded
Worke, Judge**

Kandiyohi County District Court
File No. 34-CR-15-149

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Shane D. Baker, Kandiyohi County Attorney, Stephen J. Wentzell, Assistant County Attorney, Willmar, Minnesota (for respondent)

Sarah M. MacGillis, Robert D. Sicoli, Minneapolis, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Worke, Judge; and Bratvold, Judge.

# UNPUBLISHED OPINION

**WORKE**, Judge

Appellant challenges his criminal-sexual-conduct convictions, arguing that he is entitled to withdraw his guilty pleas because they are not supported by an accurate factual basis. Appellant also raises several sentencing issues, arguing that the district court abused

its discretion by imposing a triple upward departure, a double upward departure, and consecutive sentences, and denying his motion for a downward dispositional departure. Because the district court properly accepted appellant's pleas and did not abuse its discretion by imposing consecutive sentences and denying appellant's motion for a downward dispositional departure, we affirm in part. But because the district court abused its discretion by imposing a triple upward departure and relied on erroneous aggravating factors in imposing a double upward departure, we reverse in part and remand for resentencing.

**FACTS**

In February 2015, appellant Peter Clare Hoagland was charged with eight counts of second- and fourth-degree criminal sexual conduct. The complaint alleged that between 1991 and 1998, Hoagland, who was born in 1947, had sexual contact with five boys when they were under the age of 13 or between the ages of 13 and 16. The victims grew up near Hoagland's home, and the victims alleged that Hoagland touched their penises with his hand on at least one occasion. Four of the five victims reported that Hoagland abused them many times over several years.

Hoagland pleaded guilty to all eight counts. Hoagland agreed that he and his attorney reviewed the victims' recorded statements. Hoagland claimed that he could not remember the age of the victims at the time of the abuse. As to some of the victims, Hoagland denied having any memory of sexual contact. Nevertheless, as to each count, Hoagland agreed that if the victims testified consistently with their statements to the police, Hoagland would likely be found guilty of the offense.

2

After Hoagland waived his right to a jury trial on aggravating sentencing factors, each victim testified at a sentencing court trial. Following a sentencing hearing, the district court denied Hoagland's motion for a downward dispositional departure and sentenced him to a total of 222 months in prison. The sentence included an upward departure tripling the presumptive sentence on counts four and five and a double upward departure on counts two, three, and seven. The district court also ordered Hoagland to serve his sentences on counts four, six, seven, and eight consecutively to all counts. This appeal follows.

## D E C I S I O N

### Plea withdrawal

Hoagland first argues that he is entitled to withdraw his guilty pleas because they are not supported by an accurate factual basis. Although Hoagland did not raise this issue before the district court, a defendant may appeal directly from a judgment of conviction and maintain that the record made at the plea hearing does not establish the requirements of a valid guilty plea. *Brown v. State*, 449 N.W.2d 180, 182 (Minn. 1989); *State v. Johnson*, 867 N.W.2d 210, 214 (Minn. App. 2015), *review denied* (Minn. Sept. 29, 2015).

To be valid, a guilty plea must be "accurate, voluntary and intelligent." *State v. Ecker*, 524 N.W.2d 712, 716 (Minn. 1994). If a guilty plea fails to meet any of these requirements, it is invalid, and the defendant is entitled to plea withdrawal. *State v. Theis*, 742 N.W.2d 643, 646 (Minn. 2007). We review the validity of a guilty plea de novo. *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010).

The purpose of the accuracy requirement is to prevent the defendant from pleading guilty to a more serious offense than he could be convicted of at trial. *State v. Trott*, 338

3

N.W.2d 248, 251 (Minn. 1983). A guilty plea is inaccurate if it is not supported by a sufficient factual basis. *Ecker*, 524 N.W.2d at 716. A sufficient factual basis exists if there are "facts on the record to support a conclusion that [the] defendant's conduct falls within the charge to which he desires to plead guilty." *State v. Iverson*, 664 N.W.2d 346, 349 (Minn. 2003) (quotation omitted).

Typically, the factual basis is established by the defendant's sworn admission to the conduct constituting the offense. *Ecker*, 524 N.W.2d at 716. "In two circumstances, however, a factual basis must be established by other means: when a defendant enters an *Alford/Goulette* plea and when a defendant enters a *Norgaard* plea." *Johnson*, 867 N.W.2d at 215 (quotation omitted). A defendant enters a *Norgaard* plea if he "claims a loss of memory, through amnesia or intoxication, regarding the circumstances of the offense" but the record establishes that "the defendant is guilty or likely to be convicted of the crime charged." *Ecker*, 524 N.W.2d at 716.

The "factual basis for a *Norgaard* plea is sufficiently established when the record clearly shows that in all likelihood the defendant committed the offense and that the defendant pleaded guilty based on the likelihood that a jury would convict." *Williams v. State*, 760 N.W.2d 8, 12 (Minn. App. 2009), *review denied* (Minn. Apr. 21, 2009). The district court should "have the defendant specifically acknowledge on the record at the plea hearing that the evidence the [s]tate would likely offer against him is sufficient for a jury, applying a reasonable doubt standard, to find the defendant guilty." *Theis*, 742 N.W.2d at 649; *see also Williams*, 760 N.W.2d at 12-13 (noting that *Theis* relied on *Norgaard* precedent to clarify the *Alford/Goulette* accuracy standard). This allows the district court

4

to "independently conclude that there is a strong probability that the defendant would be found guilty of the charge to which he pleaded guilty." *Theis*, 742 N.W.2d at 649 (emphasis omitted).

With one exception, Hoagland denied memory of the sexual contact, the age of the victim at the time of the sexual contact, or both. In doing so, he entered *Norgaard* pleas to nearly every count in the complaint. The offenses consist of four second-degree-criminal-sexual-conduct counts, in violation of Minn. Stat. § 609.343, subd. 1(a) (1990),[1] and four fourth-degree-criminal-sexual-conduct counts, in violation of Minn. Stat. § 609.345, subd. 1(b) (1992).[2] "A person who engages in sexual contact with another person" is guilty of second-degree criminal sexual conduct if "the complainant is under 13 years of age and the actor is more than 36 months older than the complainant." Minn. Stat. § 609.343, subd. 1(a). "A person who engages in sexual contact with another person" is guilty of fourth-degree criminal sexual conduct if "the complainant is at least 13 but less than 16 years of age and the actor is more than 48 months older than the complainant." Minn. Stat. § 609.345, subd. 1(b).

The record shows that there is a sufficient factual basis for each count. Hoagland admitted that he is more than 36 or 48 months older than all of the victims. As to victims

---

[1] The complaint lists a date range for each offense. The range is between August 1, 1991, and July 26, 1995. No changes were made to Minn. Stat. § 609.343, subd. 1(a), between those dates. *Compare* Minn. Stat. § 609.343, subd. 1(a) (1990) *with id.* (1994). Accordingly, this opinion cites the 1990 version of the statute.

[2] The complaint lists a date range for each offense. The range is between April 18, 1993, and 1998. There were no changes relevant to this opinion made to Minn. Stat. § 609.345, subd. 1(b), between those dates. *Compare* Minn. Stat. § 609.345, subd. 1(b) (1992) *with id.* (1998). Therefore, this opinion cites the 1992 version of the statute.

A and C, Hoagland admitted sexual contact, but claimed no recollection as to the age of the victims at the time of the sexual contact. Hoagland was charged with second- and fourth-degree criminal sexual conduct against victim A and second-degree criminal sexual conduct against victim C. Hoagland stated that he reviewed victims A and C's statements to police, which showed that the victims were under the age of 13 when the sexual contact began, and agreed that if the victims testified consistently with those statements, he believed a jury would convict him of the offenses. As to victim A, Hoagland admitted that the sexual contact continued after victim A turned 13. As to victim C, Hoagland also admitted that school records showed that victim C moved out of the area before he turned 13.

Hoagland was charged with both second- and fourth-degree criminal sexual conduct as to victims B and D and fourth-degree criminal sexual conduct as to victim E. Hoagland claimed to have no memory of sexual contact with victims B, D, or E. But Hoagland admitted that each victim's statement established that sexual contact occurred when the victim was in the age range required for the offenses and that a jury would believe the victims' testimony and convict him of the offenses.

The victims' statements are summarized in the sworn complaint, which is part of the record and was referenced several times at the plea hearing. *See Trott*, 338 N.W.2d at 252 (noting that a defendant's guilty plea effectively admits the allegations in the complaint). The complaint and Hoagland's admissions that if the victims testified consistently with their statements he would be convicted of each count, allowed the district court to independently determine that a jury would likely convict Hoagland. *See Theis*,

6

742 N.W.2d at 649. The record made at the plea hearing establishes a sufficient factual basis for Hoagland's guilty pleas.

Nevertheless, Hoagland claims that his pleas are invalid because his admissions were elicited through leading questions, he was not advised on the record that he was entering a *Norgaard* plea, and the evidence was not discussed in detail at the plea hearing. We disagree.

The use of leading questions to establish a *Norgaard* plea is discouraged. *Ecker*, 524 N.W.2d at 717. But leading questions do not invalidate a guilty plea as long as there is a sufficient factual basis. *Raleigh*, 778 N.W.2d at 95-96.

Hoagland was not specifically informed that he was entering a *Norgaard* plea, but this also does not invalidate his plea. In *Ecker*, the supreme court noted that the defendant should be informed on the record that he is entering a *Norgaard* plea and of the legal implications of such a plea. 524 N.W.2d at 717. But this is a recommendation, not a requirement. *See Williams*, 760 N.W.2d at 12 (noting that the supreme court "has not definitively stated what is required, as opposed to recommended, to establish an adequate factual basis for a *Norgaard* plea"). Even though Ecker was not specifically advised that he was entering a *Norgaard* plea, the supreme court concluded that his plea was supported by a sufficient factual basis. *Ecker*, 524 N.W.2d at 717.

The supreme court noted in *Theis* that Ecker's plea involved an extensive review of the evidence. 742 N.W.2d at 648. But *Theis* does not indicate that the failure to engage in a detailed review of the evidence at the plea hearing makes a *Norgaard* plea inaccurate. *See Williams*, 760 N.W.2d at 13 (stating that "*Theis* did not set forth any new

7

requirements"). Although there was no exhaustive review of the evidence at Hoagland's plea hearing, Hoagland testified that he reviewed the victims' statements with his attorney. The prosecutor also discussed school records that established victims B and C's ages at the time of the sexual contact. As Hoagland admitted at the hearing, the victims' testimony and other evidence that the state would have presented at trial would be sufficient to convict Hoagland of each of the charged counts.

Hoagland further complains that the district court "did not personally question [him] as to why he wanted to plead guilty to all eight counts when he did not remember committing the offenses." When a defendant enters a *Norgaard* plea, the district court "should personally interrogate the defendant regarding why the defendant is willing to plead guilty, unless the court is reasonably satisfied defense counsel and the prosecution have established an adequate factual basis." *Ecker*, 524 N.W.2d at 717. Here, the district court was satisfied that an adequate factual basis had been established. Furthermore, while the district court did not personally inquire into why Hoagland wanted to plead guilty, Hoagland's attorney did. Hoagland testified that he wanted to accept responsibility for what he had done and that he had reviewed the record and based on the evidence against him believed it was in his best interests to plead guilty.

Finally, Hoagland argues that his pleas are invalid because, while he admitted that a jury would find him guilty based on the victims' statements, he was not asked whether the jury would find him guilty using the reasonable doubt standard. Hoagland, however, was fully informed of the requirement that the state prove his guilt beyond a reasonable doubt both by his signed plea petition and by his attorney at the plea hearing. Accordingly,

8

when Hoagland was asked if he believed that a jury would convict him based on the victims' statements, he knew that the jury could not return a guilty verdict unless the charges were proven beyond a reasonable doubt.

Hoagland's guilty pleas are supported by a sufficient factual basis. Because the district court did not err by accepting Hoagland's pleas, he is not entitled to plea withdrawal.

*Sentencing issues*

Hoagland next argues that the district court made several sentencing errors. He claims that the district court abused its discretion by imposing a triple upward departure on count five, a double upward departure on count seven, and consecutive sentences on counts four, six, seven, and eight. He also argues that the district court abused its discretion by denying his motion for a dispositional departure. We address each claim in turn.

Under the Minnesota Sentencing Guidelines, the district court sentences an offender based on a presumptive range. Minn. Sent. Guidelines II.C (1992).[3] The district court must impose a sentence within that range unless substantial and compelling reasons exist to depart. *State v. Soto*, 855 N.W.2d 303, 308 (Minn. 2014). We review the district court's decision to depart for an abuse of discretion. *State v. Geller*, 665 N.W.2d 514, 516 (Minn.

---

[3] As stated above, a range of offense dates is listed in the complaint. "If the date of the offense is not specified in the complaint and cannot be ascertained with certainty, the [district court] shall establish the relative order of events, based on the information available[.]" Minn. Sent. Guidelines cmt. II.A.02. The district court and the parties agreed that the 1991 version of the sentencing guidelines applies to counts one, two, and three; the 1992 version applies to counts four and five; the 1994 version applies to counts six and eight; and the 1996 version applies to count 7. The 1992 version is cited here because we first address the upward departure on count five.

9

2003). But whether the district court's reason for departure is proper is a legal issue that we review de novo. *Dillon v. State*, 781 N.W.2d 588, 595 (Minn. App. 2010), *review denied* (Minn. July 20, 2010). If the reason given by the district court justifies the departure, the departure will be allowed. *Williams v. State*, 361 N.W.2d 840, 844 (Minn. 1985). If the reason given is improper or inadequate and there is insufficient evidence to justify the departure, the departure will be reversed. *State v. Jackson*, 749 N.W.2d 353, 357 (Minn. 2008).

The sentencing guidelines provide a non-exclusive list of aggravating factors that justify an upward departure. Minn. Sent. Guidelines II.D.2.b (1992). "Generally, the district court may impose an upward durational sentencing departure if the evidence shows that the defendant committed the offense in a particularly serious way." *State v. Hicks*, 864 N.W.2d 153, 157 (Minn. 2015).

### *Triple upward departure on count five*

The district court determined that the presumptive sentence on count five—second-degree criminal sexual conduct against victim D—was 44 months in prison with a discretionary range of 42 to 46 months. The district court imposed a prison sentence of 138 months.

The upward limit of a departure is generally double the presumptive sentence. *State v. Evans*, 311 N.W.2d 481, 483 (Minn. 1981). It is a "rare" case "in which the facts are so unusually compelling that an even greater degree of departure will be justified." *Id.* Accordingly, this court is less deferential to the district court's decision when the district court imposes a prison term that is more than double the presumptive sentence. *Dillon*,

781 N.W.2d at 598. If there are valid reasons for departure, this court conducts a de novo review of those reasons to determine if they are severe enough to justify a sentence that is more than double the presumptive term. *Id.*

The district court based its triple departure on multiple aggravating factors: extreme vulnerability based upon the victim's trust; planning, grooming, and manipulation; particular cruelty; and "long term and persistent emotional and psychological injury." Hoagland argues that these factors are either invalid or do not justify a departure of more than double the presumptive sentence. We first address whether these are permissible aggravating factors supported by evidence in the record. We then address whether any valid aggravating factors were severe enough to justify a triple upward departure.

### *Extreme vulnerability based on abuse of trust*

The district court found that Hoagland acted like a father figure to victim D and used that position of trust to abuse victim D. Hoagland argues that vulnerability based on a "position of trust" is not an appropriate aggravating factor.

Citing *Taylor v. State*, Hoagland claims that abuse of trust was taken into account by the legislature in setting the penalty for second-degree criminal sexual conduct and therefore is not a valid aggravating factor. 670 N.W.2d 584, 589 (Minn. 2003). We agree. In *Taylor*, the defendant was convicted of first-degree criminal sexual conduct for engaging in sexual contact with a three-year-old child who was enrolled in a daycare program operated by his wife. *Id.* at 585. The district court departed upward, in part, based on Taylor's violation of a position of trust. *Id.* at 586. Although abuse of trust was not an element of the offense, the supreme court determined that violation of trust was an

"inappropriate bas[i]s for departure whe[n] th[at] fact[] w[as] already taken into account by the legislature in determining the degree of seriousness of the offense." *Id.* at 589.

Similarly, in an earlier case relied on by *Taylor* and involving the same second-degree criminal sexual conduct charge Hoagland was convicted of here, the supreme court stated that whether the defendant "used his relationship with the victim to facilitate the commission of the offense is one of the factors relied upon in determining the degree of the seriousness of a sex offense and which therefore should not be available for use in determining whether to depart." *State v. Hagen*, 317 N.W.2d 701, 701, 703 (Minn. 1982).

*Taylor* also noted that "position-of-trust assaults," as opposed to "stranger sexual assaults," are "the more typical" type of assault. 670 N.W.2d at 589 n.6. Accordingly, abuse of a position of trust does not make the offense more serious than the typical sex offense against a child. *See Hicks*, 864 N.W.2d at 157.

Hoagland abused the trust of victim D and his mother by representing himself as a father figure. While this conduct is reprehensible, we follow *Taylor* and *Hagen* and conclude that abuse of trust does not make the offense more severe than the typical case and was considered by the legislature in setting the penalty for the offense. It is therefore not an appropriate aggravating factor.

### *Planning, grooming, and manipulation*

The district court found that Hoagland specifically targeted children like victim D whose fathers were not around. He gained the "trust and admiration" of victim D and the other victims by giving them gifts, doing recreational activities with them, and taking them on trips. In doing so, Hoagland manipulated victim D and the other victims to feel

"responsible to protect him." The district court further found that Hoagland made victim D feel like he was Hoagland's "special person." The relationship Hoagland cultivated with victim D and the other victims made them less likely to report the abuse and allowed Hoagland to continue the abuse for years.

A high degree of planning is a recognized aggravating factor. *State v. Kindem*, 338 N.W.2d 9, 17-18 (Minn. 1983); *State v. Yaritz*, 791 N.W.2d 138, 146 (Minn. App. 2010), *review denied* (Minn. Feb. 23, 2011). Extensive efforts to conceal a crime have also been recognized as a valid departure factor. *State v. Grampre*, 766 N.W.2d 347, 353 (Minn. App. 2009), *review denied* (Minn. Aug. 26, 2009). Moreover, this court has specifically recognized planning and manipulation as aggravating factors in child-sex-abuse cases. *State v. Bates*, 507 N.W.2d 847, 850, 854 (Minn. App. 1993), *review denied* (Minn. Dec. 27, 1993).

The district court's findings are supported by the record. Victim D testified that he met Hoagland through Hoagland's involvement in his youth hockey team. Hoagland paid for victim D's hockey gear. Victim D also testified that for a period of time he spent nearly every day with Hoagland. Victim D and the other victims testified that Hoagland took them on frequent trips to his cabin and even on trips out of the state. Victim E, who is victim D's brother, testified that he, Hoagland, and victim D would go tubing, boating, and shooting at Hoagland's cabin. Victim D called Hoagland's actions "brainwashing" and "manipulation." Victim D was so confused about his relationship with Hoagland that he invited Hoagland to his wedding years after the abuse ended. The district court's finding that Hoagland targeted, groomed, and manipulated victim D to conceal his crimes and

13

continue his abuse provides a valid reason for departure that is supported by sufficient evidence.

### *Particular Cruelty*

The district court found that Hoagland treated victim D with particular cruelty because he "often tricked [v]ictim D into submitting to sexual acts by making promises of a recreational activity only to 'bait and switch' after gaining [v]ictim D's isolation through the false promise." The district court also found that Hoagland "recorded the boys unclothed and several boys were aware that [Hoagland] was at least attempting to surreptitiously video-tape them while using the bathroom."

The sentencing guidelines recognize the defendant's treatment of the victim "with particular cruelty" as an aggravating factor. Minn. Sent. Guidelines II.D.2.b(2) (1992). "Particular cruelty involves the gratuitous infliction of pain and cruelty of a kind not usually associated with the commission of the offense in question." *Tucker v. State*, 799 N.W.2d 583, 586 (Minn. 2011) (quotations omitted).

The evidence does not support a finding that Hoagland treated victim D with significantly more cruelty than a victim in a typical case. An offender's use of deceit to gain a child's isolation is not evidence of the type of atypical and severe "infliction of pain and cruelty" that justifies a departure. *See id*.

Hoagland videotaping victim D also does not support a finding of particular cruelty. While other victims testified that Hoagland surreptitiously videotaped them, victim D did not. Even if Hoagland did videotape victim D, this is not a proper basis for departure. Hoagland could have been charged with using a minor in a sexual performance for this

14

conduct. *See* Minn. Stat. § 617.246 (1992). Facts underlying a separate uncharged incident cannot support an upward departure. *State v. Edwards*, 774 N.W.2d 596, 602 (Minn. 2009). The district court erred by relying on particular cruelty as an aggravating factor.

### *Long-term and persistent emotional and psychological injury*

The district court determined that the "long term and persistent emotional and psychological injury to the victims justifies an upward departure." More specifically, the district court found that victim D "got 'hardcore into drugs' to numb the pain, is dealing with depression, and says 'there's a lot of times I wanted to end myself because of the embarrassment and shame.'"

Psychological injury is a valid reason for an upward departure. *State v. Allen*, 482 N.W.2d 228, 233 (Minn. App. 1992), *review denied* (Minn. Apr. 13, 1992). But the injury must be severe and unusual. *See State v. Branson*, 529 N.W.2d 1, 5 (Minn. App. 1995) (concluding that evidence showing the victim was "scared a lot" was not "the type of severe aggravating circumstance to warrant a departure"), *review denied* (Minn. Apr. 18, 1995).

Hoagland argues that nearly every victim of child sex abuse suffers some psychological injury. *See State v. Cermak*, 344 N.W.2d 833, 840 (Minn. 1984). While this may be true, victim D's emotional injuries seem especially severe. Victim D testified that he still struggles with the abuse, which is significant given that the abuse ended nearly 20 years ago. The sexual contact led to drug abuse, depression, and even thoughts of suicide. Hoagland also claims that because victim D did not testify that he sought counseling, there is no objective indication of the severity of the psychological trauma. Hoagland, however, cites no caselaw holding that an upward departure based on psychological injury is

15

improper unless the victim sought treatment. Given the severity of the psychological injury victim D testified to, we conclude that this is an appropriate ground for departure.

### *Severity of the departure*

In sum, the district court erred in relying on abuse of trust and particular cruelty as reasons for imposing a triple upward departure. The district court was justified, however, in imposing an aggravated sentence based on planning, grooming, and manipulation and victim D's severe psychological injury. The next question is whether these two aggravating factors justified a departure greater than double the presumptive sentence. As indicated above, "the circumstances justifying a departure that more than doubles a presumptive sentence are extremely rare." *State v. Spain*, 590 N.W.2d 85, 89 (Minn. 1999). This court reviews de novo whether the circumstances justify such a severe departure. *Dillon*, 781 N.W.2d at 598.

The 138-month sentence imposed by the district court for count five tripled the presumptive sentence and constitutes a 92-month departure. Minn. Sent. Guidelines IV (1992). Hoagland's sentence for second-degree criminal sexual conduct is greater than the presumptive sentence that could have been imposed had he committed first-degree criminal sexual conduct. *Id*.

Criminal-sexual-conduct offenses justifying triple departures usually involve violence, threats of violence, or severe physical injury. *See, e.g.*, *Perkins v. State*, 559 N.W.2d 678, 684, 692 (Minn. 1997) (affirming a greater than triple departure when defendant threatened to kill the victim and her children, choked the victim to the point of losing consciousness, and committed the sexual assault knowing he had AIDS); *State v.*

16

*Glaraton*, 425 N.W.2d 831, 834 (Minn. 1988) (affirming a greater than triple departure when defendant stuck a gun in the victim's mouth and rectum, "inflicted gratuitous physical injury," urinated on the victim's face and forced the victim to lie in the urine, and ridiculed the victim's religious beliefs); *State v. Van Gorden*, 326 N.W.2d 633, 634-35 (Minn. 1982) (affirming greater than double departure when defendant inflicted a "serious and permanent" injury, subjected victim to multiple forms of penetration, and invaded victim's zone of privacy); *State v. Butterfield*, 555 N.W.2d 526, 531-32 (Minn. App. 1996) (affirming triple departure when defendant subjected victim to multiple types of penetration, caused physical injury, and threatened to kill victim), *review denied* (Minn. Dec. 17, 1996). Count five does not involve the severe aggravating circumstances necessary to justify a more than double upward departure. Accordingly, we reverse and remand for the district court to reduce Hoagland's sentence on count five to no more than double the presumptive sentence.

### *Double upward departure on count seven*

The district court determined that the presumptive sentence on count seven—fourth-degree criminal sexual conduct against victim E—was one year and one day. The district court imposed a double upward departure of 24 months and two days. Because the district court ordered this sentence served consecutively, the 24-month prison term was executed. *See State v. Watkins*, 650 N.W.2d 738, 738 (Minn. App. 2002) ("When consecutive sentencing is permissive and the court pronounces a sentence that is to run consecutively to another executed sentence, the presumptive disposition for the consecutive sentence is also execution of the sentence.").

17

The district court relied on the same aggravating factors it relied on in departing on count five. As stated above, violation of a position of trust is not a valid aggravating factor.[4] We address each of the remaining aggravating factors below.

### *Planning, grooming, and manipulation*

Like his brother, victim D, the district court found that Hoagland selected victim E because his father was not in his life. Hoagland acted as a father figure to victim E. Hoagland took victim E to his cabin for recreational activities. Hoagland also took victim E to the state fair and bought him meals. Victim E testified that Hoagland took him snowmobiling and built him a box for his RC car. The district court found that Hoagland's actions were evidence of planning and grooming victim E for abuse. The district court's findings are supported by the record, and this is an appropriate aggravating factor. *See Bates*, 507 N.W.2d at 854.

### *Particular cruelty*

The district court found that Hoagland treated victim E with particular cruelty by measuring victim E's penis and videotaping victim E using the bathroom. Measuring a victim's penis is not the type of atypical "gratuitous infliction of pain and cruelty" that supports a determination of particular cruelty. *See Tucker*, 799 N.W.2d at 586. And, like victim D, victim E did not testify that Hoagland videotaped him naked or using the

---

[4] This is perhaps even more evident in the case of count seven than it was for count five. The state could have charged Hoagland with second-degree criminal sexual conduct if he was "in a position of authority over [victim E] and use[d] this authority to cause [victim E] to submit." Minn. Stat. § 609.343, subd. 1(b) (1996). "[R]eliance on other offenses that are not part of the charge and of which the defendant was not convicted is not a permissible basis for durational departure." *Taylor*, 670 N.W.2d at 588.

18

bathroom.  Moreover, as stated above, if Hoagland had videotaped victim E, he could have been charged with a separate offense.  *See* Minn. Stat. § 617.246 (1996).

### *Long-term and persistent emotional and psychological injury*

The district court found that, as a result of Hoagland's abuse, victim E "reports substance abuse issues and feels unjustified guilt when he sees his niece or nephew get a diaper change."  The district court's findings are supported by victim E's testimony.  Given that victim E is still seriously affected by the abuse almost 20 years later, this is the type of atypical psychological injury that justifies a sentencing departure.  *See Allen*, 482 N.W.2d at 233.

"[W]hen a reviewing court concludes that a district court based a departure on both valid and invalid factors, a remand is required unless it determines the district court would have imposed the same sentence absent reliance on the invalid factors."  *State v. Vance*, 765 N.W.2d 390, 395 (Minn. 2009) (quotation omitted).  Given that two of the four aggravating factors the district court relied on in imposing a double upward departure on count seven are invalid, we reverse and remand this sentence to allow the district court to reconsider whether a double upward departure is appropriate based only on the valid factors of planning, grooming, and manipulation and psychological injury.

### *Consecutive sentences*

Hoagland next argues that the district court erred by imposing consecutive sentences on counts four, six, seven, and eight.  The district court stated that the consecutive sentences were "permissive" under the sentencing guidelines.

The sentencing guidelines allow for permissive consecutive sentences "[w]hen the offender is convicted of multiple current felony convictions for crimes against different persons, and when the sentence for the most severe current conviction is executed according to the guidelines." Minn. Sent. Guidelines II.F.2 (1992).[5] We review the district court's interpretation of the sentencing guidelines de novo, *State v. Johnson*, 756 N.W.2d 883, 894-95 (Minn. App. 2008), *review denied* (Minn. Dec. 23, 2008), and its decision to impose consecutive sentences for an abuse of discretion. *Neal v. State*, 658 N.W.2d 536, 548 (Minn. 2003).

At the time of sentencing, Hoagland had a criminal-history score of zero. Under the applicable sentencing guidelines, a conviction of either second-degree or fourth-degree criminal sexual conduct with a zero criminal-history score carries a presumptive stayed sentence. Minn. Sent. Guidelines IV. The district court, however, applied the *Hernandez* method to counts one, two, three, and five. When multiple current offenses involving separate behavioral incidents are sentenced on the same day, the *Hernandez* method allows the district court to increase the offender's criminal-history score for each felony sentenced previously. *State v. Gould*, 562 N.W.2d 518, 520 (Minn. 1997) (citing *State v. Hernandez*, 311 N.W.2d 478 (Minn. 1981)). The district court sentenced the second-degree criminal-sexual-conduct counts first in the following order: count one, count two, count three, and

_____

[5] The 1992 sentencing guidelines are cited here because they apply to count four, the earliest in time of counts four, six, seven, and eight. The 1996 sentencing guidelines, the latest possible version that applies to any of these four offenses, contains a similar but differently worded permissive-consecutive-sentencing provision. Minn. Sent. Guidelines II.F. (1996).

count five.  As the district court pronounced each sentence, it increased Hoagland's criminal-history score so that the presumptive sentences for counts three and five became executed, rather than stayed.  The district court then imposed consecutive sentences on counts four, six, eight, and seven using criminal-history scores of zero.

Hoagland argues that none of his convictions are presumptive commits to the commissioner of corrections and so permissive consecutive sentencing does not apply.  *See* Minn. Sent. Guidelines II.F.2.  His argument is contingent on the premise that the district court was prohibited from using the *Hernandez* method to make counts three and five presumptive commits before imposing consecutive sentences.  If this were the case, then the sentence for Hoagland's most severe current conviction would not be executed and consecutive sentencing would constitute a departure from the guidelines.  *See Id.*, II.F.

Comments to the sentencing guidelines provide the procedure for sentencing when both concurrent and consecutive sentences are imposed:

> When concurrent and consecutive sentences are imposed for different offenses, the most severe offense involving consecutive sentencing shall be sentenced first. When there are multiple offenses at the highest severity level, the earliest occurring offense among those at the highest severity level shall be sentenced first.  After sentencing the most severe offense or the earliest occurring offense among those at the highest severity level, subsequent sentences shall be imposed in the order in which the offenses occurred.  The presumptive duration for each offense sentenced consecutively shall be based on a zero criminal history score.  The presumptive duration for each offense sentenced concurrently shall be based on the offender's criminal history as calculated by following the procedures outlined in II.B.[6]

---

[6] This language was removed from the 1996 version.  Minn. Sent. Guidelines cmt. II.F.02 (1996).  That version states, "The order of sentencing when consecutive sentences are

Minn. Sent. Guidelines cmt. II.F.02. Here, the district court followed this procedure. There were multiple offenses at the highest severity level. Accordingly, the district court sentenced count one first because it was the earliest occurring of the second-degree criminal-sexual-conduct offenses. The district court then sentenced the remaining offenses in the order in which they occurred. The district court applied the *Hernandez* method, which is memorialized in section II.B of the guidelines, to the concurrent sentences. *See* Minn. Sent. Guidelines cmt. II.B.101 (1992) ("The basic rule for computing the number of prior felony points in the criminal-history score is that the offender is assigned a particular weight for every felony conviction for which a felony sentence was stayed or imposed before the current sentencing. . . ."). The district court applied a criminal-history score of zero to the consecutively sentenced offenses.

We have previously approved the use of the *Hernandez* method when imposing both concurrent and permissive consecutive sentences as long as a zero criminal-history score is applied to the consecutively sentenced offenses. *State v. Rannow*, 703 N.W.2d 575, 578-79 & n.3 (Minn. App. 2005); *Walker v. State*, 394 N.W.2d 192, 199-200 (Minn. App. 1986), *review denied* (Minn. Nov. 26, 1986). Because the *Hernandez* method was properly used to enhance counts three and count five to presumptive commits, "the sentence for the most severe current conviction is executed according to the guidelines" and the district

imposed by the same [district court] is to sentence in the order in which the offenses occurred." *Id.* The 1996 version applies only to count seven. Moreover, application of the 1996 version would have resulted in the same sentence because the district court sentenced the offenses in the order in which they occurred.

court did not abuse its discretion by imposing consecutive sentences. Minn. Sent. Guidelines II.F.2.[7]

### *Downward dispositional departure*

Finally, Hoagland argues that the district court failed to consider the majority of his arguments in denying his motion for a downward dispositional departure. This court will reverse a district court's decision to deny a downward dispositional departure only for a clear abuse of discretion. *Soto*, 855 N.W.2d at 307-08.

The district court imposes a downward dispositional departure when the sentencing guidelines call for an executed prison term, and the district court instead stays a prison sentence and orders probation. *State v. Trog*, 323 N.W.2d 28, 30-31 (Minn. 1982). A defendant's "'*particular* amenability to individualized treatment in a probationary setting'" supports a dispositional departure. *Soto*, 855 N.W.2d at 308 (quoting *Trog*, 323 N.W.2d at 31). *Trog* outlines the factors that may justify a dispositional departure and states that "the defendant's age, his prior record, his remorse, his cooperation, his attitude while in court, and the support of friends and/or family, are relevant to a determination whether a defendant is particularly suitable to individualized treatment in a probationary setting." 323 N.W.2d at 31. But the presence of one or more of these mitigating factors does not require the district court to depart. *State v. Wall*, 343 N.W.2d 22, 25 (Minn. 1984). "[A]s

---

[7] Hoagland also argues that his overall sentence of 222 months exaggerates the criminality of his conduct. *See State v. Yang*, 774 N.W.2d 539, 563 (Minn. 2009) ("The district court abuses its discretion in imposing consecutive sentences when the resulting sentence unfairly exaggerates the criminality of the defendant's conduct."). Because we reverse and remand for resentencing on counts five and seven, we do not address this claim.

long as the record shows the [district] court carefully evaluated all the testimony and information presented before making a determination," this court will not interfere with the district court's decision to deny a dispositional departure. *State v. Pegel*, 795 N.W.2d 251, 255 (Minn. App. 2011).

The record shows that the district court carefully considered all information presented by Hoagland before denying his motion. At the sentencing hearing, the district court mentioned "the numerous letters in support" of Hoagland and stated that it had reviewed every item that was filed. The district court stated, "I thoroughly read each and every letter, [and] the psychological assessment, and I listened to [Hoagland] and Dr. Marston [who did a psychosexual assessment of Hoagland]." The district court concluded, however, that "[t]he harm herein was so terrible that a significant executed prison sentence can be the only restorative response." The district court also filed a sentencing memorandum in which it reiterated that it had "thoroughly read" all of the materials and evidence submitted by Hoagland.

The record shows that the district court carefully considered Hoagland's arguments and the evidence he presented. The district court denied Hoagland's motion primarily because of the severity of the offenses. The supreme court has stated that the seriousness of the offense and the defendant's culpability are appropriate considerations when addressing a motion for a downward dispositional departure. *Soto*, 855 N.W.2d at 313. The district court did not abuse its discretion by denying Hoagland's motion for a downward dispositional departure.

In sum, we affirm the district court's acceptance of Hoagland's guilty pleas, imposition of consecutive sentences, and denial of Hoagland's motion for a downward dispositional departure. But we reverse and remand for the district court to reduce Hoagland's sentence on count five to no more than twice the presumptive sentence. We also reverse and remand for resentencing on count seven because the district court based its upward departure on both valid and invalid aggravating factors.

**Affirmed in part, reversed in part, and remanded.**